122-1617 WC, Village of Niles, appellant by Daniel Egan v. The Illinois Workers' Compensation Commission, bodice marcatus appellee by Lane Corday. Mr. Egan, you may proceed. Thank you. Good morning, your honors. Good morning, Mr. Corday. May it please the court. My name is Daniel Egan. I'm here on behalf of the employer, the Village of Niles. We are here today on what I believe is a very simple issue, yet somehow it has become rather complicated. That issue is, how does a permanent partial disability award or settlement that took place prior to the amendments of 2005, where the values of body parts were increased, how is this credit calculated against a post-amendment award? To me, it seems like it should be very simple, but if it were, I don't think we would be before your honors this morning. Section 8E-17 of the Act states, for the permanent loss of use or the permanent partial loss of use of any member or partial loss of sight of an eye for which compensation has been paid, then such loss shall be taken into consideration and deducted from any award for the subsequent injury. In this case, as you know, the employee had a prior settlement for 20% loss of use of his right leg in a 1999 workers' compensation filing. He had a subsequent injury to the same body part. He received an award from the arbitrator for 30% loss of use of the leg, and there was a credit given for the prior settlement. The arbitrator made the award of 30% loss of use of the leg, calculating that to be 64.5 weeks, which is appropriate under the amendments of 2005. He took the prior settlement of 20% loss of use of the leg, which was 40 weeks, and he awarded an additional 10% loss of use of the leg. In doing this, he subtracted the weeks from the prior award rather than subtracting the permanency percentages. I think the facts, as I just described, are undisputed. The employer disagrees with this calculation. The employer's position is that the calculation should be 30% minus 20% equals 10% loss of use of the leg, or 21.5 weeks of permanency, as opposed to the 24.5 weeks that the arbitrator awarded. To do as the arbitrator has awarded actually is more than 10% loss of use of the leg. It's a little bit more than 11% loss of use of the support both sides of the argument. We supplied your honors with these decisions, not for purposes of precedent or persuasive authority to your honors, but to illustrate to your honors the problem that employers and employees have when trying to figure out what the appropriate credit is because the commission disagrees. The employer believes that this is a matter of law and that your honors should interpret the statute as necessary and take the plain and ordinary meaning of the statute, which tells us that for the permanent partial loss of any member, and the leg is a member, for which compensation has been paid, then such loss shall be taken into consideration and deducted from the award. As our briefs indicate, there are basically two camps. I've highlighted those already for your honors. The one camp is you take the percentages and simply subtract them out. The other camp takes the corresponding weeks of the percentages and subtracts them out. As your honors see, there is a difference in what the values would be. We can't rely on the commission for any guidance because the commission disagrees on how this credit should be awarded. Your honors, I submit to you that it is not right, it is not fair, or any other equitable word you wish to use that the determination of this credit for a prior settlement or award should depend on the whim of the arbitrator or the commission panel to which a case is assigned. This credit can be and ought to be uniform across the board. In 2005, the legislature took up debate on increasing values under Section 80, and they had the opportunity to discuss the issue of credit. As far as we can tell, there is nothing in the legislative history that specifically addresses the issue of credit. I grant you that it's noted that the goal was to maximize awards to injured workers, but there's no debate on how to apply a prior credit. The debate was only on how much, if at all, to increase permanency awards going forward. So, we can't rely upon the commission, the body charged with interpreting the statute and their split. We cannot rely upon the legislative history because it's silent. So, what do we do? Well, there are some case law decisions that give us some indication as to how this should be awarded, and I submit to your honors that that case law is favorable to the employer's position. The first case, the General Motors case from 1975, involved two issues. The second issue involved what rate is used when determining the amount of award, and that was what the Supreme Court appears to have focused on in their decision. But it's the other issue that's important, and in General Motors, the claimant agreed that where there is an award for a prior injury, the credit given is for the percentage of disability, and that percentage is taken into consideration in the subsequent injury. It seems from the General Motors case, your honors, that the percentage of disability controls, and it sounds like that is supportive of respondents' position in this matter. The next case, the Keele case, talks about the application of an out-of-state settlement to an Illinois injury to the same body part. The out-of-state settlement from Iowa was for 17.5% loss of the leg. The commission gave credit for 17.5% disability. They didn't compare the Iowa statute, figure out the weeks, take it over to Illinois and subtract out the took the percentage of disabilities and did the calculation. Lastly, your honors, the Dorsey claim involved a prior settlement for loss of an arm based upon the shoulder injury. That claimant argued that there should be no credit for a shoulder injury because the law had changed, and the records show the prior AD loss, and that was enough for there to be a credit, and it was based solely on the percentages. They did not look into the underlying award any further, simply using the percentages. Finally, your honors, at the end of the day, Section 8E17 of the Act remains untouched by the amendments of 2005 when the values under Section 8E were increased. As the Supreme Court stated in the General Motors case, the cardinal rule of all statutory construction to which other rules are subordinate is that the true intent and meaning of the legislature must be ascertained and given effect. The language used in the statute is the primary source for determining this intent, and where the language is certain and unambiguous, the proper function of the court is to enforce the statute as enacted. The clear and obvious meaning of the pertinent provisions of Section 8E is that permanent loss or permanent partial loss for which compensation has been paid shall be credited for a subsequent injury to the same member. To do as the Commission did results in an award that is, in fact, greater than the additional 10% loss of use of the leg that the arbitrator awarded and the Commission affirmed. Your honors, I submit to you that the statute requires an analysis simply on the basis of percentages of disability. 30% minus 20% equals 10%, which under 8E-12 now equals 21.5 weeks for the leg, and we would request that your honors modify the Commission award to be consistent with this position. Thank you. Any questions from the court? May I ask, in reading 8E-17, do I read this correctly that if there's an amputation, then there's a deduction, and then the next sentence, and it is one sentence, says for loss of use, then such loss shall be, quote, taken into consideration and deducted. Does it seem to that the legislature has treated these two different situations with different language? Well, we know from prior decisions that amputation can be separate and apart from the permanency when there is a statutory amputation. Your from the Commission where the amputation benefit is paid, and in addition, there is a permanent total disability or wage differential paid on top of it. I think that for permanent partial loss of a member, you look to the second part of section 8E-17, which says that for permanent partial loss of a member for which compensation has been paid, and there is no dispute that the prior 20% loss of use of the leg has been paid, then you consider that loss in the current situation. I think there's two separate parts to section 8E-17. I hope that answers your question. Well, thank you. I mean, in part, because it seems to me they're saying, here's what you do if there's an amputation. If there's a previous permanent partial loss, then here's what you do, and they don't use the same language. Or am I misreading that? I think they use the same language. They both talk about that the loss shall be rewarded. The only thing they add differently to the second part is they say shall be taken into consideration that prior loss. So, if they use different language, then is that significant? I don't think it is in this case, because we don't have an amputation. We have a prior permanent partial disability settlement, not an amputation. I think the second sentence or the last sentence of section 8E-17 is what controls. If I communicated that I didn't understand that, I apologize. I do. But I guess my question is, within that statute, there's two different solutions. For amputations, you deduct. For loss of use, you consider and deduct. And I'm just wondering what you make of the different use of language by the legislature. Now, Mr. Egan, to follow up on that, there's no questions that both of those provisions provide for deduction, correct? Correct. So, this whole case is a dispute with what do we mean by shall be taken into consideration? I think so. I mean from your perspective? I think so, yes. But either way, if you have a prior amputation and then you have a subsequent injury, you're still trying to apply a prior settlement or award to a post-amendment decision. That's correct. That's what the subject of shall be taken into consideration addresses, right? That there's been a prior award? Correct. Okay. So, shall be taken into consideration, the only mandatory thing is deducted. Yes. So, shall be taken into consideration. Consideration is a, what I might consider to be a kind of open-ended type of term. I shall take it into consideration, but I might not do anything about it, but I have to deduct. But this should not be subject, as I stated, to the whim of an arbitrator or a commission as whether you deduct it or not, it should be fair across the board. It should be fairly easy to construe. And as we pointed out in our brief. Well, if that were the question, I'd say shall be, if we leave out that language, it just say shall be deducted. I mean, to me, it's bad drafting, but I agree, but it's all we have to work with. And we don't have any legislative history. And we in giving the statute, the plain and ordinary meaning, you deduct the award, the prior award. You consider it and it is deducted. Well, but it also might be reasonably there. Of course, this is where we get into argument, whether it's reasonable, but it might be, I consider it, but I don't deduct. Well, I don't think there's any, any commission decision that does not deduct. This has consider and deducted. Well, we don't care about the commission decision. Yeah, we know that. We're looking at a statute. You're right. I think the statute does still state in both circumstances that you do deduct the award. You consider it and deduct it. It's not may deduct, it's consider and deduct. So I do think it is poor drafting, but I still think that no matter what you deduct that prior. May I ask, I mean, then I guess this leads to me. The next question is, do we read that? It's almost like you're asking us to render that superfluous that consider it because you say, well, yeah, I consider it, but really the deductus. And I understand, but wouldn't that reading require us to render that taken into consideration language superfluous. And while it's certainly possible, it was just bad drafting. I don't think from a legal perspective that we're entitled to say, well, it was bad drafting. I think presumably we're supposed to presume or that there's a meaning to it and read it as a whole. I agree with your honor. But then the second part of that phrase is and deduct. Well, yes, I mean, absolutely. So there's still a deduction. And so I think when they do take that prior award or settlement into consideration, and then they deduct from any award for the subsequent injury. I do agree it's bad drafting, but I think you're still taking that prior decision into consideration and deducting. It doesn't say and deduct or may deduct or they say and deduct, not even shall deduct, but take into consideration and deduct. So I think there's always a deduction. And I think it's fairly simple that it should be fair and equitable across the board. You can't go to panel A of the commission and you get a with the employer's position here. You go to panel B of the commission and you get a decision consistent with the employee's position. It's not fair to the parties. It's not fair to the employer who ends up in front of both panels on this issue and they get different decisions. How does one reconcile that to the employer? How does one reconcile that? Okay, Mr. Egan, we've let you run real long. You will have time in reply. Thank you. And I want to put in context my statement about not caring about a commission decision. That's assuming de novo review. Okay. Thank you. Thank you, your honor. Okay, thank you. Mr. Corday, you may respond. Good morning, your honors. Lane Corday representing Fotis Markitis, the epilee. Let me first apologize to the court in certain areas of the brief where section 8E17 is listed. For some reason, there was an autocorrect when it was printed and it has a C with a circle, the copyright signal, I think instead of E. And I want to apologize to the court for that. When I read the brief before printing, it did not have that. I left the country and when I came back, it was printed and I've discovered that. So I do apologize if that caused any confusion, but I'm sure you understood what that meant. The theme of today's argument is you can't give back what you never got. All right. Taking it away from the legal issue itself or applying it to the language section 8E17, we talked about the credit to be given. And the key part of this is for which compensation has been paid. And that's the argument we have. What is the compensation that has been paid? Our system in the commission works on body parts being worth a certain amount of weeks. And that's why weeks play into this. And each percentage translates into weeks. So we had a leg, which was 200 weeks and 10% of a leg is 20 weeks. That was prior to the amendments. After the amendments, the leg was worth 215 weeks. So 10% of the leg is 21.5. So what I'm saying here, this really isn't an issue of law. It's an issue of common sense. How do we look at the plain language, plain reading of the statute and do what it says to do? We know from Kiel that the commission's determination and the calculation of credit is a factual matter. What happens when it's factual matter? It then becomes a manifest way issue. It's not a matter of law. It's not a matter of interpretation of law. It's a matter of application of the law, such as PPD, permanent partial disability. When the commission awards a certain percentage, what they do is they determine what that percentage is. The law is there giving you 200 or 215 weeks, and it's up to the arbitrator and the commissioners to determine what percentage you get. Same thing here. What credit do you get? The calculation of credit is within the province and discretion of the commission. Counselor, I read your brief to suggest the commission can do anything it feels like doing. Unfortunately, I have a personal opinion, Your Honor, that says they should do uniformly, but the case law says they have the ability to discriminate. I don't think they should, but that's what the law says. My personal opinion, I don't think, matters. What case says they have the right to discriminate? Certainly not Kiel. Not Kiel. No, no, no. It says that it has the ability to be flexible. That's the term, not discriminate. It has the ability to be flexible, is what Kiel says. Kiel wasn't the case that dealt with the comparison of weeks versus weeks, or loss versus loss. It was just taking into consideration that Iowa award by percentage against the percentage that was awarded in the Illinois case. You are absolutely correct. You are absolutely correct. That's the differentiation here. When we both cite Kiel as the key case here, we see it to say the commission has the discretion to determine the credit. Let's get to the language of the statute. There's two sections of the statute that talk about deduction for awards from subsequent insurance. The first section of the statute talks about an amputation cases. That's the first part. It has nothing to do with this case. Correct. It's the second portion. It says for the permanent loss of use. Now, the permanent loss of use in his first case was what percentage? 20%. 20%. That was the loss of use. Correct. Then it says for the permanent loss of use, or the permanent partial loss of use of any member for which compensation has been paid. You received compensation for the 20% loss of use, did you not? Yes, he did. Okay, so we got compensation. That was the compensation paid, 20% at that time. Please. The only thing that changed in the new statute was the amount of weeks for the 20%, not 20%. For the permanent loss of use for which compensation has been paid, then the loss shall be taken into consideration. Not the number of weeks. What's to be taken into consideration is the loss. The loss is 20% and deducted from any award for the subsequent injury. The award for the subsequent injury is 30%. You subtract the loss from the original case, 20%, from the 30% that was awarded in the new case to yield 10%. That 10% is applied to the new number of weeks for this loss. It's not number of weeks versus number of weeks. It's loss versus loss times the statutory number of weeks. There's nothing that's ambiguous about this. I mean, what you're suggesting is because you got a number of weeks for the initial loss of 20%, then when you determine that he has 30%, you take the number of weeks that you get for 30% minus the number of weeks that you got for 20%. That's comparison of the number of weeks that are attributed to losses. It's not a comparison of losses. So, I don't understand the argument. It befuddles me. Maybe you can help me out as to why this is somehow ambiguous. It's one sentence. I'm sorry. Let me give you a common life example. Okay? No, no. I don't want a life example. No, no, no. I want your interpretation of this single section of the statute. One sentence. The determination of the amount of compensation paid is based on the body part. Our system is a number of weeks. Counsel, we understand that. I understand that you get a number of weeks by the statute. What I'm trying to figure out is what is it that you compare to determine the deduction? Weeks or loss. You compare what is paid, your honor. But it doesn't say that. It says for which compensation has been paid, then the loss shall be taken into consideration. Not the number of weeks of compensation. It says the loss is to be taken into consideration. The loss is 20% in this case. How do you get to comparison of number of weeks when the statute says the loss is to be taken into consideration and deducted? It's the loss that's to be deducted, not the number of weeks. Are you ready for me? The loss is the percent. It does not say the percentage. It says the loss. What is the loss? The loss is calculated based on the number of weeks. No, no. I didn't ask you how it was calculated. I asked you what it was. The loss is 20%, is it not? No. Maybe I can help just a minute because we all want to talk cryptically about loss. Let's look at the statute. It's a loss of use. Justice Hoffman, it's loss of use is the question to you, Mr. Cordray. What is the value of the loss of use that is supposed to be taken into consideration? No, no. That's where we have a problem with you. The statute doesn't say you take into consideration the value of the loss of use. It says you take into consideration the loss of use. You can't dispute the fact that in the original case, the loss of use was 20%. Yes, I agree with you. But if you'll let me finish, give me one minute, I'll explain the story. You purchase a product that is $200 worth of product. Then you return it a month later. But a month later, the price is $215. You don't get a credit for $215. You get a credit for $200. You get a credit for that which has been paid. Simple as that. The plaintiff does not, the petitioner does not receive 20%. He receives the amount of weeks which calculates the 20%. That's how our system works. It's based on the amount of weeks times the wage rate. So that's the loss. That's the value of the loss. It's not the percentage. We agree percentage should be taken. But the question is the next part of the statute is for which compensation has been paid. And the extra weeks here have not been paid. Simple as that. The commission is the one that's charged with that. So if you want to say that the commission has been doing it wrong all these years, I guess you have the right to say that. But the commission has been doing it and contrary to what has been presented by appellant, there's no split at the commission. There are 11 cases cited. 10 are based on the McBride case which goes into a detailed explanation of how the commission has the discretion to determine the credit. And one case is contrary. So it's 10 to 1. If that's a split, I guess so. But the commission, I'm seeing this as a manifest weight question that Keil says, McBride says, and the court has always held that the determination of the value is within the discretion of the commission. And the commission has decided as such with accurate and explanatory language. So I can't tell you the loss is the value of the loss. And that's why it shall be taken into consideration. Although I don't believe the shall be taken into consideration as any different from an amputation or permanent partial loss of use to clear that issue up. I think the reason it's stated is that because an amputation is clearly 50% or 100%. It's either a partial amputation or it's a full amputation. That would be in my mind, and I didn't write the statute, I wasn't there, the only differentiation I can make that to clear up any issues that the other justices have on that issue. Really, you can't get back what you haven't given. That's it's a common sense argument, plain language. To me, that's the plain reading of the language. If you want me to continue, I'll continue. Or if you have another issue on that. Well, you have time, Mr. Corday. Thank you. If we're relying on Keil to determine where we go from this, Keil states that section 8017 does not restrict the commission as to how it should determine the proper amount of credit. Consider it just has to be a just and equitable result. And it has to be within the statutory guidelines. Here, if you give credit to something that was not paid, then that's not just inequitable to the employee. It certainly isn't. If you give credit to the employer for something that's not paid, that's a benefit to the employer. That's not just inequitable. The cases that are cited here, Keil, Keil, and General Motors really didn't issue the amount of credits, what the calculation credit is. They say that's for the commission to determine. That's the difference in the statute. What they dealt with was, was there a right to credit? Keil was, was there a right to an out-of-state credit? GM, was there a right to credit? Because the argument in GM 48 years ago was, oh, no, he got a settlement. Therefore, he doesn't get a deduction from the award. That's the differentiation between those cases. But they both state the proposition that the commission is given the direction and has the province to determine the credit. So I think that if the commission is considering the credit and has done it properly, then it's a manifest weight question. As I said, my personal opinion is, you should take this as a matter of law and decide that the credit is based on the value you received for the loss, the weeks that the value was before, and not worry about the manifest weight. But unfortunately, that's not how law works. My opinion, I don't think, means anything. My argument may mean something. My opinion means nothing. I'm going to give you another example, common sense example. If you have a pizza, up in Chicago, we eat a lot of pizza, and that pizza is 200 units of pizza, and you eat 10% of that pizza, you've eaten 200 units. If Malnati's then comes out with a extra pizza, which is 215 units, and you eat 10% of that, that's 215. It's not the same. It's different. It's a different value. And in this case here, he received 20%, which is a number of weeks. That's our system. It's a number of weeks. You may say the weeks don't count, but they do count. Everything, every body part has a number of weeks. And that's why the number of weeks credited is important because that's what he received. That's what compensation was paid for. We agree that it's the percentage. The question is, the determination by the commission to make that credit issue. And they have always, except for one case, always found based on the General Motors and Kielt case, that the credit should be given on the value of the loss. And the value of the loss is based on the weeks. Further questions from the court? Okay. Thank you, Mr. Corday. Okay. Thank you, your honors. Thank you, Mr. Egan. You may reply. Very briefly. Thank you. As Justice Hoffman pointed out, there was a prior 20% disability that was paid and was paid according to the law back in 1999 or 2000, whenever the case was settled. There was a subsequent award for 30% loss of use of the leg with a credit given for the prior 20%. The commission has always been rate blind. The commission is also blind as to the calculation of a credit. It has always been permanent. The percentage of permanency that is given, it is always, it is 30%, in this case, 30% minus 20% equals 10%. And that's even what the arbitration decision says, which the commission affirmed. The arbitrator awarded petitioner an additional 10% loss of use of the right leg. Once you go through all the machinations and looking at weeks and values, what the commission has awarded, in fact, is in excess of 10%. It is in excess of 11%. It's 11% and change loss of use of the leg at 24.5 weeks. We would, again, ask your honors to issue a decision indicating that it is the percentage of disability that controls, in this instance, 30% minus 20% equals 10% times the value of the leg comes out to 21.5 weeks. If there are no questions, I thank your honors for your time. Thank you, Mr. Corday. Any questions from the court? Okay. Well, thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement.